# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs at Jackson May 1, 2012

## STATE OF TENNESSEE v. CHRISTOPHER WHEELER

**Appeal from the Criminal Court for Marshall County**
**Nos. 2011-CR-29, 2011-CR-47      Robert Crigler, Judge**

---

**No.  M2011-01657-CCA-R3-CD - Filed September 27, 2012**

---

The Defendant, Christopher Wheeler, entered open guilty pleas to twenty counts of sexual exploitation of a minor and one count of aggravated statutory rape.  After a sentencing hearing, the trial court ordered the Defendant to serve sixteen years in the Department of Correction.  On appeal, the Defendant contends that the trial court's sentence is excessive and contrary to law and that concurrent sentencing on all counts would have been appropriate.  Following our review, we conclude that the trial court did consider the purposes and principles of the sentencing act, that the evidence in the record does not preponderate against the trial court's findings, and that the trial court did not abuse its discretion in determining the length of the Defendant's sentence. Thus, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

Michael J. Collins, Assistant Public Defender, Shelbyville, Tennessee, for the appellant, Christopher Wheeler.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Charles Crawford, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

On February 23, 2011, the Defendant was indicted for twenty counts of sexual

exploitation of a minor, a Class D felony. Months later, on April 20, 2011, the Defendant was also indicted for aggravated statutory rape, a Class D felony. Pursuant to an agreement with the State, the Defendant pled guilty to all twenty counts of sexual exploitation of a minor and one count of statutory rape, with sentencing reserved for the trial court's determination.

Charles Brannon, an employee with the probation and parole department who prepared the Defendant's presentence report, testified that investigators went to the Defendant's residence after receiving a phone call from a woman in Missouri who informed them that an unidentified man had been exchanging inappropriate pictures with her fourteen-year-old sister.[1] Apparently, after receiving this phone call, the officers launched an investigation into the allegations. As a result of their investigation, they tracked the phone to a location in Lewisburg and executed a search warrant on the Defendant's home. The Defendant told investigators that he had met this fourteen-year-old girl online and that, at some point, he had received a text message from the girl's sister telling him to "stop communicating with her." Mr. Brannon testified that, according to the Defendant, he met the girl in a chat room, and she told him that she was fourteen years old. The Defendant then asked the girl to send "a clean picture of herself. . . . later he asked for other photos. . . . Some were nude and did show her face." The Defendant then told Mr. Brannon that he did stop "[t]exting" the fourteen-year-old "for a few minutes and then started back."

Mr. Brannon testified that the Defendant gave a statement to another officer explaining that "he requested pictures of young teens on . . . [a website called] MocoSpace." As a result of his request, the Defendant received more than ten pictures of juvenile females with and without clothing. The Defendant also stated that he had "received a picture of an infant with a penis inside of the infant." The Defendant explained to the officers that he received more pictures over a two- or three-day span, and he also exchanged pictures with people online.

Once incarcerated, the Defendant spoke with investigators again about requesting pictures of young teens online, but he also discussed the fourteen-year-old who is the victim in the aggravated statutory rape indictment, H.M.[2] Mr. Brannon testified that the Defendant said he met H.M. "last year [and that they] started talking about her family and things." The

---

[1] This fourteen-year-old is neither the victim in the aggravated statutory rape indictment, who is also fourteen years old, nor in the twenty-count sexual exploitation of a minor indictments. According to the record, the Defendant was never charged with his offenses against this victim because he deleted the text and photo messages exchanged between them when the officers allowed him to go into his bedroom alone to retrieve his cellular phone during their execution of the search warrant.

[2] To protect the identity of minor victims, this court will refer to them by their initials.

Defendant "asked her about having sex" approximately three months after they met.  Mr. Brannon explained that, according to the Defendant, one day "when [H.M.'s] parents weren't home, [the Defendant] said she texted him to come over, and they started making out[;] and he admitted to having sex with [H.M.]"  Mr. Brannon also received a statement from H.M. She told investigators that the Defendant just "drop[ped] by one day" and that she was "foolish enough to let him in the house.  They are sitting on the couch, watching T.V. And then he asks her to have sex and she agrees to it."  Mr. Brannon testified that the Defendant told him "that he was angry at himself for the offense, as well as feeling foolish for the offense."  He said that he should not have had sex with H.M. but that "sh[-]t happens."

Mr. Brannon testified that during their interview, the Defendant said that "he was hearing voices at night."  However, the Defendant said that he was not hearing voices during the interview.  The Defendant also told Mr. Brannon that "the only illegal substance he uses is marijuana[;] . . . he claimed that marijuana relaxes him[,] and he has no plans of quitting."  Mr. Brannon also testified that the Defendant "has been unable to maintain employment for more than a few months at a time."

Mr. Brannon further testified that H.M.'s grandmother sent him a letter about the changes that her granddaughter has gone through since the incident with the Defendant.  This letter was admitted into evidence.

The lead investigator on the Defendant's case, James Johnson, testified that he was contacted by patrol officers regarding pictures they had found on the Defendant's cellular phone.  The Defendant allowed the officers to search his phone and admitted that had deleted the pictures of the fourteen-year-old Missouri girl before retrieving the phone for the officers. The Defendant and his girlfriend agreed to come to the police station to give statements.  At the station, the Defendant admitted that he had met a fourteen-year-old girl online and that he had asked her for nude pictures of herself and had received those pictures.  The Defendant also admitted that he was exchanging pictures of underage girls with people online and that he had received pictures of little girls and infants; the Defendant was then incarcerated.

Investigator Johnson presented three letters written by the Defendant while incarcerated, two written to his girlfriend and one written to a former cell mate, Donald King. In the first letter, the Defendant stated that he "need[ed] to get out of wanting little girls and stuff like that."  In the second letter, the Defendant asked his girlfriend to "[f]ind out from [H.M.] what she all saying and let me know some way with them wanting to know who we're talking about [sic]."  The last letter stated, "[l]ast weekend Cheyenne told me that the fourteen-year-old may be pregnant.  I am really hoping she ain't by me, though."  Inv. Johnson testified that he later spoke with Mr. King, who was also incarcerated, and that Mr. King told him that the Defendant "was in the back, bragging about having sex with [H.M.],

a fourteen-year-old girl here in Lewisburg." Inv. Johnson explained that this was how they found out about H.M. and why the Defendant was not indicted for aggravated statutory rape until months after the twenty-count sexual exploitation of a minor indictment.

Questioning by the court revealed that each of the twenty counts of sexual exploitation of a minor involved a different child and that there may have actually been more than twenty pictures total. Inv. Johnson told the court that he believed that there were a few pictures depicting more than one child. He also informed the court that the pictures did not involve children fourteen years old and older but were of preteens and infants. On re-cross-examination, Inv. Johnson denied that all the children pictured were at least elementary school through middle school aged and stated that he believed some children were under school age.

A jail corrections officer, Danny Kerbo, and the jail administrator, Sabrina Patterson, testified regarding the Defendant's behavior in jail since his incarceration on the instant charges. Both testified that the Defendant had been unruly and had a difficult time following instructions. Ms. Patterson also testified that the Defendant had been on "lockdown" numerous times since his incarceration and that he was currently on lockdown for "not following the rules."

Before the close of proof, the Defendant gave the following allocution: "I feel guilty [for] what I done. I regret it. Should never have happened."

In issuing its findings, the trial court stated the offenses for the record and the purposes and principles of the sentencing act that it was required to consider. First, the trial court acknowledged, as a mitigating factor, that the Defendant pled guilty to the offenses, sparing the State the expense of a trial and the aggravated statutory rape victim from having to come and testify - "with a little more weight as to the aggravated statutory rape charge." The trial court then found that three enhancement factors applied: (1) the Defendant's criminal history, including uncharged criminal conduct; (4) the victim was particularly vulnerable because of age, on which the court placed great weight; and (8) the Defendant had previously violated the terms of his probation. See Tenn. Code Ann. § 40-35-114 (1), (4), (8). Regarding factor (1), the trial court noted that the Defendant's criminal history report reflected a felony forgery conviction, multiple misdemeanor assault convictions, and a shoplifting conviction. The trial court also noted that the Defendant had an "extremely disturbing" juvenile record from Michigan that it was somewhat constrained from considering because the courts had ultimately dismissed those charges, but the trial court noted that the social history from those cases was "very disturbing." The trial court also noted that the Defendant was on probation for an assault conviction out of Bedford County when all twenty-one of the instant offenses were committed and explained that this factor

went to determining both the length and consecutive nature of the Defendant's sentence.

Although the Defendant did not request an alternative sentence, the trial court found that he was not an appropriate candidate. The trial court explained that the Defendant's chance of reoffending was great, finding that confinement was necessary to protect society by restraining a defendant who had a long history of criminal conduct and to avoid depreciating the seriousness of this "atrocious, heinous, . . . offensive" act. Finally, the trial court concluded that less restrictive measures had been frequently or recently applied, unsuccessfully, to the Defendant; he had previously been incarcerated for short amounts of time, had violated his probation in the past, and had violated the terms of his current probation when he committed the instant offenses.

The trial court noted that it was required to find that the ultimate sentence imposed "is just[ly] deserved in relation to the seriousness of the offense and no greater than that deserved for the offense committed." The trial court then set the length of each individual sentence at the maximum in the range, four years. The trial court ordered Counts 1-10 to be served concurrently to each other and Counts 11-15 to be served concurrently to each other but consecutively to counts 1-10. Counts 16-20 were also ordered to be served concurrently to each other but consecutively to Counts 1-15, and the trial court ordered the Defendant to serve the four-year sentence on the aggravated statutory rape conviction consecutively to all other counts, for an effective sixteen-year sentence in the Department of Correction (DOC). The court also noted that the sentences imposed would be served consecutively to any other sentence the Defendant "might currently have."

ANALYSIS

The Defendant challenges the length of his sentence and contends (1) that the trial court's sentence is excessive and contrary to law because the weight given the enhancement factors to increase the sentences to the maximum in the range did not comply with the purposes and principles of the sentencing act; (2) that the sentence was greater than deserved for the offense committed because the totality of the circumstances were such as to render the sentence excessive; (3) that "the imposition of sentences must accede to the reality that the state does not have available sufficient prison facilities to accommodate all persons, who according to the traditional concepts of punishment would be incarcerated"; and (4) that concurrent sentencing on all counts would have been appropriate. The State responds that the trial court properly sentenced the Defendant, exercising its discretion in weighing the statutory factors in enhancement and mitigation. The State also responds that the Defendant cannot show an abuse of discretion in the trial court's imposition of a sixteen-year sentence because he pled guilty to twenty-one offenses, each carrying a minimum two-year sentence.

The Defendant challenges both the length of his individual sentences and the imposition of consecutive sentencing. On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comts.; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct. Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999) (quoting State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997)); see also State v. Carter, 254 S.W.3d 335, 344-45 (Tenn. 2008). If our review reflects that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely de novo without the presumption of correctness. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see also Carter, 254 S.W.3d at 344-45.

In conducting a de novo review of a sentence, this court must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts (AOC) as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b); see also Carter, 254 S.W.3d at 343; State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). The defendant's potential for rehabilitation or treatment should also be considered. See Tenn. Code Ann. § 40-35-103(5).

*A. Length of Sentence*

The Defendant contends that considering the totality of the circumstances of his offenses, the length of his sentence is excessive and contrary to law and that the trial court did not properly consider the purposes and principles of sentencing when imposing his sentence. The 2005 amendments to the Sentencing Act, which became effective June 7, 2005, no longer impose a presumptive sentence. Carter, 254 S.W.3d at 343. As further explained by our supreme court in Carter,

> the trial court is free to select any sentence within the applicable range so long
> as the length of the sentence is "consistent with the purposes and principles of

[the Sentencing Act]." [Tenn. Code Ann.] § 40-35-210(d). Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," [Tenn. Code Ann.] § 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the law," [Tenn. Code Ann.] § 40-35-102(3), and consideration of a defendant's "potential or lack of potential for ... rehabilitation," [Tenn. Code Ann.] §40-35-103(5).

Id. (footnote omitted).

The 2005 Amendment to the Sentencing Act deleted appellate review of the weighing of the enhancement and mitigating factors, as it rendered these factors merely advisory, as opposed to binding, upon the trial court's sentencing decision. Id. Under current sentencing law, the trial court is nonetheless required to "consider" an advisory sentencing guideline that is relevant to the sentencing determination, including the application of enhancing and mitigating factors. Id. at 344. The trial court's weighing of various mitigating and enhancing factors is now left to the trial court's sound discretion. Id. Thus, the 2005 revision to Tennessee Code Annotated section 40-35-210 increases the amount of discretion a trial court exercises when imposing a sentencing term. Id. To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See id. at 343; State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Contrary to the Defendant's contentions, the record reflects that the trial court made the requisite findings of fact and considered the purposes and principles of the sentencing act in determining the length of the Defendant's sentence. Therefore, our review is de novo, and the trial court's determinations are presumed correct, unless the Defendant can affirmatively show that the sentence is erroneous. After thoroughly reviewing the evidence produced at the sentencing hearing, the trial court's findings, the presentence report, the nature of these offenses, the Defendant's statement to the court, statistical information provided by the AOC, and the enhancement and mitigating factors presented by the parties, we cannot conclude that the Defendant's sentence is excessive.

The trial court found that three enhancement factors, (1), (4), and (8), were applicable to the Defendant's case, and the record supports their application. See Tenn. Code Ann. § 40-35-114 (1), (4), (8). The court placed great weight on factor (4) and noted that the Defendant's juvenile record was extremely disturbing from a social history aspect. This court has held that application of even a single factor may be sufficient to justify an enhanced

sentence. <u>See, e.g.</u>, <u>State v. Eric D. Charles</u>, No. W2007-00060-CCA-R3-CD, 2008 WL 246023, at *6 (Tenn. Crim. App. Jan. 30, 2008); <u>State v. Shawn McCobb and Marcus Walker</u>, No. W2006-01517-CCA-R3-CD, 2007 WL 2822921, at *4 (Tenn. Crim. App. Sept. 26, 2007). The Defendant contends that the weight the trial court afforded each factor to enhance his sentence to the maximum in the range "did not comply with the 'purposes and principles' of the act" and loosely argues that "the punishment imposed does not fit the crime or the offender." However, we find that this argument is without merit.

First, we reiterate that it is within the trial court's sound discretion to assign weight to enhancement and mitigating factors and that the trial court properly noted its reasons on the record. Additionally, the Defendant pled guilty to twenty counts of sexual exploitation of a minor and one count of aggravated statutory rape, and the sentencing range for each count was between two and four years. Because the weight to be given the various factors is within the broad discretion afforded our trial courts, and given the apparent applicability of the three enhancement factors, we cannot conclude that the trial court erred or abused its discretion in setting the Defendant's various sentences at the maximum in the range, four years.

## *B. Partial Consecutive Sentencing*

The Defendant also appears to challenge the trial court's imposition of partial consecutive sentencing. Tennessee Code Annotated section 40-35-115(b) provides that a trial court may, in its discretion, order sentences to run consecutively if it finds any one of the following criteria by a preponderance of the evidence:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Id. (emphasis added). These criteria are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing. However, the imposition of consecutive sentencing is subject to the general sentencing principles that the overall sentence imposed "should be no greater than that deserved for the offense committed" and that it "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed[.]" Tenn. Code Ann. § 40-35-103(2) & (4); see State v. Joseph Nathaniel Nance, E2010-01221-CCA-R3-CD, 2012 WL 1744500, at *21 (Tenn. Crim. App. May 16, 2012).

The trial court's oral findings evince that it found at least one of the aforementioned criteria applicable: number (6). The record supports that determination. Regarding criterion (6), the trial court noted and the record reflects that the Defendant committed all twenty-one offenses while on probation. A finding that one of the above-listed criteria applies supports the imposition of consecutive sentencing. Thus, the trial court properly exercised its discretion in ordering partial consecutive sentencing in the Defendant's case.

Furthermore, we note that the Defendant pled guilty to twenty-one counts of sexually related offenses against minors, each carrying a minimum two-year sentence, and he faced a maximum potential sentence of eighty-four years. While the trial court did sentence the Defendant to the maximum in the range on all twenty-one counts, it ordered clusters of those counts to run concurrently to one another and consecutively to other clusters of counts, for an effective sentence of sixteen years. In consideration of the forgoing, we cannot conclude that the trial court abused its discretion in ordering the Defendant to serve sixteen years in the DOC.

## CONCLUSION

Accordingly, the judgment of the trial court is affirmed.


_____
D. KELLY THOMAS, JR., JUDGE